*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAMOND CHARLES WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
July 15, 2026
2:34 PM

No. 371944
Oakland Circuit Court
LC No. 2023-286738-FH

Before: GADOLA, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of failure to pay child support, MCL 750.165. He was sentenced, as a second-offense habitual offender, MCL 769.10, to 150 days in jail and three years' probation for each conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of defendant's failure to pay child support. Between July 2016 and January 2020, defendant made only one monthly full child-support payment, a few small voluntary payments, and one court-ordered payment of $1,500.

Before trial, defendant requested to assert an impossibility defense. At the evidentiary hearing on that issue, however, he invoked his right to remain silent. The only evidence supporting the defense consisted of the child-support order, an audit from the Oakland County Friend of the Court (OCFOC), and records from the Michigan Child Support Enforcement System (MiCSES) documenting his payment history. Because defendant presented no evidence that payment was truly impossible, the trial court held that he could not assert an impossibility defense at trial.

The prosecution moved to amend its witness list before trial to remove Crystal Crooks, the mother of defendant's children and victim of his failure to pay child support. The prosecution explained that Crooks's testimony was unnecessary to prove its case. Although defense counsel did not object, defendant did. Defendant also refused to agree to having Crooks testify remotely, while the prosecution explained that requiring her to appear in person would be unduly burdensome because Crooks lived out of state and lacked sufficient childcare. Defense counsel

-1-

confirmed he did not intend to call Crooks as a witness, but defendant objected, claiming there was a "misunderstanding" and that he would call Crooks as a witness. The trial court granted the prosecution's motion to remove Crooks from its witness list.

During trial, defendant objected to the admission of the MiCSES records, arguing that the OCFOC specialist was not a proper witness to authenticate the records as business records. The trial court admitted the records over defendant's objection, concluding that the OCFOC specialist was qualified to authenticate and identify the documents. The jury found defendant guilty on both counts. The trial court sentenced him as noted above and ordered him to pay restitution in the amount of his child-support arrearage, $38,461.66.

Defendant later moved for a new trial, arguing that defense counsel was ineffective and his rights under the Confrontation Clause of the Sixth Amendment, US Const, Am VI, were violated. Following an evidentiary hearing, the trial court denied defendant's motion. This appeal followed.

## II. CONFRONTATION CLAUSE

Defendant first claims that his rights under the Confrontation Clause were violated in two respects: (1) defense counsel failed to call Crooks as a witness, and (2) the trial court admitted the MiCSES records without testimony from the person who made the relevant entries in those records. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Although defendant objected to Crooks's absence and the admission of the MiCSES records, he did not do so on the basis of the Confrontation Clause. "A challenge on one ground before the trial court is not sufficient to preserve a challenge on another ground on appeal." *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021). Accordingly, defendant's Confrontation-Clause challenges are unpreserved, and our review is for plain error. *Id*.

"Under the plain-error rule, defendant bears the burden to prove (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (quotation marks and citation omitted). "If defendant satisfies those three requirements, we must make a fourth determination: whether the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id*. at 280.

## B. LEGAL FRAMEWORK

The United States and Michigan Constitutions establish and protect a defendant's right to confront witnesses. US Const, Am VI; Const 1963, art 1, § 20. "The right is implicated only for 'testimonial' evidence, because the Confrontation Clause applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *People v Bruner*, 501 Mich 220, 227; 912 NW2d 514 (2018), quoting *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "The threshold question for any Confrontation Clause challenge, therefore, is whether the proffered evidence is testimonial." *Bruner*, 501 Mich at 227. " 'Testimony' is 'a solemn

declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id*. (citation omitted).

> Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." These formulations all share a common nucleus and then define the Confrontation Clause's coverage at various levels of abstraction around it. [*People v Nunley*, 491 Mich 686, 698; 821 NW2d 642 (2012) (citation and brackets omitted, ellipses in *Nunley*).]

"A statement is testimonial if the declarant should reasonably have expected that her statement would be used in a prosecutorial manner and an objective witness would believe that the statement would be available for use at a later trial." *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019).

## C. CROOKS

The trial court correctly held that the Confrontation Clause was not implicated by Crooks's absence from trial. "The specific protections the Confrontation Clause provides apply only to statements used as substantive evidence." *Nunley*, 491 Mich at 697 (quotation marks and citation omitted). Thus, "out-of-court testimonial statements are inadmissible unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant." *Id*. at 698.

Here, Crooks did not testify, and the prosecution did not introduce any out-of-court statements from her as substantive evidence. Because Crooks was not a witness against defendant, the Confrontation Clause was not implicated. Accordingly, defendant had no constitutional right to cross-examine her. See *Bruner*, 501 Mich at 227 (explaining that "the Confrontation Clause applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' ") (Citation omitted).

## D. MiCSES RECORDS

The trial court also correctly held that the MiCSES records were nontestimonial, and, therefore, did not implicate the Confrontation Clause. Defendant claims that the records are testimonial because "their content and purpose inherently 'bear testimony' against the accused because they record whether the obligor has fulfilled or failed to fulfill a criminally enforceable duty." The record demonstrates otherwise.

While the MiCSES records reflect whether child support payments have been made, the OCFOC specialist testified that the system serves a broader administrative function. She explained that the MiCSES tracks not only nonpayment, but successful payments of child support, any legal

proceedings related to the case, and any notes made on the case. As she described it, the MiCSES records provide "pretty much a . . . basic breakdown of everything in the case." In other words, the MiCSES records track *all activity* in a specific case, indicating that they are generated for administrative purposes. In this respect, the MiCSES records are "a routine, objective cataloging of an unambiguous factual matter" that were created for the "administrative business reason" of tracking all activity with respect to the child support order in this case. *Nunley*, 491 Mich at 707. Because the records were not created for purposes of a criminal prosecution, they were nontestimonial. Accordingly, their admission did not trigger the protections of the Confrontation Clause, and defendant had no constitutional right to cross-examine the specific person who entered the data into the MiCSES system.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next claims that defense counsel was ineffective for (1) refusing to call Crooks as a witness, and, by extension, impermissibly waiving defendant's Confrontation Clause right to confront her, and (2) failing to conduct an adequate investigation and present sufficient evidence to support an impossibility defense. We disagree.

### A. STANDARDS OF REVIEW

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Under the clear-error standard, the trial court's factual findings "cannot be disturbed unless the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). But "because no *Ginther*[1] hearing was held, our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

### B. LEGAL FRAMEWORK

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *Trakhtenberg*, 493 Mich at 51. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy. Initially, a court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks, brackets, and citation omitted). "Counsel always retains the duty to make reasonable

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* (quotation marks and citation omitted).

## C. CROOKS

Defendant's argument with respect to this issue is twofold: first, he contends that defense counsel rendered ineffective assistance by refusing to call Crooks as a witness against his wishes; second, he claims defense counsel impermissibly waived his Confrontation-Clause rights and that the trial court did not obtain a separate, personal waiver from defendant.

Defendant's second argument fails because, as noted above, he had no right to confront Crooks because she was never used as a witness against him. *Bruner*, 501 Mich at 227. Defense counsel could not waive a right defendant did not have. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (defining waiver as "the intentional relinquishment of a *known right*.") (Quotation marks and citation omitted, emphasis added).

Defendant's first argument also fails because he has not shown prejudice. On appeal, he contends that Crooks was an essential witness because only she could testify about other, direct payments and support he provided outside the payments recorded by the MiCSES. But defendant "bears the burden of establishing the factual predicate for his claim." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (quotation marks and citation omitted). Defendant provides no evidence that Crooks would actually testify that he made such payments or provided additional support. Indeed, defendant acknowledges his own lack of insight as to what Crooks would say if called as a witness by claiming that the jury was deprived "of the only witness who could verify *or disprove*" that he provided the external support he claims. Because defendant has not shown that Crooks would testify in his favor, he has failed to establish that her absence was outcome-determinative. *Trakhtenberg*, 493 Mich at 51.[2]

## D. IMPOSSIBILITY INVESTIGATION

A defendant charged with felony nonsupport may assert the common-law defense of impossibility. *People v Likine*, 492 Mich 367, 398; 823 NW2d 50 (2012). The defense is based on the principle that "a defendant cannot be held criminally liable for failing to perform an act that was genuinely *impossible* for the defendant to perform." *Id.* at 399. This Court provided a nonexhaustive list of factors for a trial court to consider when determining whether a defendant may present an impossibility defense:

> These should include whether the defendant has diligently sought employment; whether the defendant can secure additional employment, such as a second job; whether the defendant has investments that can be liquidated; whether the defendant has received substantial gifts or an inheritance; whether the defendant owns a home that can be refinanced; whether the defendant has assets that can be

---

[2] Because defendant cannot show prejudice, we need not address the reasonableness of defense counsel's decision.

sold or used as loan collateral; whether the defendant prioritized the payment of child support over the purchase of nonessential, luxury, or otherwise extravagant items; and whether the defendant has taken reasonable precautions to guard against financial misfortune and has arranged his or her financial affairs with future contingencies in mind, in accordance with one's parental responsibility to one's child. The existence of unexplored possibilities for generating income for payment of the court-ordered support suggests that a defendant has not raised a true impossibility defense, but merely an assertion of inability to pay. A defendant's failure to explore every reasonably possible avenue in order to pay his or her support obligation not only reflects an insufficient concern for paying the debt he owes to society, it also reflects an insufficient concern for the child. In those instances, the defendant may not invoke the shield of the impossibility defense. [*Id.* at 402-404 (quotation marks and citation omitted).]

Defendant asserts that defense counsel rendered ineffective assistance by failing adequately investigate defendant's financial circumstances and present evidence supporting an impossibility defense. According to defendant, a proper investigation would have uncovered evidence that it was impossible for defendant to comply with the child support order. But, again, defendant "bears the burden of establishing the factual predicate for his claim." *Putman*, 309 Mich App at 248 (quotation marks and citation omitted). Defendant claims that Investigator Jonathan Chmura's affidavit, submitted with his motion for a new trial, satisfies this burden. It does not.

The trial court correctly noted that Chmura's affidavit "does not raise a true impossibility defense, but merely an assertion of inability to pay which is insufficient." Nothing in the affidavit demonstrates that defendant "explore[d] every reasonably possible avenue in order to pay his . . . support obligation[.]" *Likine*, 492 Mich at 403. In fact, Chmura's affidavit actually undermines defendant's impossibility claims: it shows that defendant "last sold a property in 2020[,]" indicating that defendant did own real property during the time frame in which he failed to pay child support that could have been sold to satisfy his child-support obligations, and that he owned a motorcycle and trailer. It further noted that defendant had a business interest in ABC Co. Properties, LLC, which was listed as "not in good standing" since 2021—again, indicating that the company was in good standing during the relevant nonpayment time frame in this case. Because defendant has not shown that additional investigation by defense counsel would have unearthed true evidence for his impossibility defense, he cannot show that any alleged failure to do so was outcome-determinative. *Trakhtenberg*, 493 Mich at 51.[3]

---

[3] As with defendant's other ineffective-assistance-of-counsel claim, because defendant has failed to establish prejudice, we need not address whether defense counsel's performance was reasonable.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron